**McNEIL–PPC, INC., Plaintiff,**

v.

**The PROCTER & GAMBLE COMPANY, Procter & Gamble Distributing Company and Procter & Gamble Paper Products Company, Defendants.**

Civ. A. No. 90–B–2029.

United States District Court,
D. Colorado.

June 18, 1991.

Frederick J. Baumann, Peter L. Edwards, Rothgerber, Appel, Powers & Johnson, Denver, Colo., Philip S. Johnson, Dianne B. Elderkin, Lynn B. Borreale, Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, Pa., for plaintiff.

H. Thomas Coghill, Paul E. Goodspeed, Coghill and Goodspeed, Denver, Colo., Allen H. Gerstein, Carl E. Moore, Jr., Marshall, O'Toole, Gerstein, Murray & Bicknell, Chicago, Ill., Fredrick H. Braun, Larry L. Huston, Procter & Gamble Co., Cincinnati, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Hearing was held June 13, 1991, on defendants the Procter & Gamble Company, Procter & Gamble Distributing Company and Procter & Gamble Paper Products Company's (P & G) motions for (1) summary judgment on plaintiff McNeil-PPC, Inc.'s (McNeil-PPC) complaint alleging patent infringement and (2) leave to file a request for reexamination of the patent in suit in the Patent and Trademark Office (PTO). I also entertained argument on McNeil-PPC's motion to condition P & G's leave to request reexamination in the PTO on P & G's stipulation that the results of the reexamination would be binding on P & G in this action. Because there remain genuine issues of material fact regarding the validity of the patent in suit and whether P & G's product infringed, I deny summary judgment. Because P & G need not acquire leave from this court to file a request for reexamination in the PTO, that motion is moot. For the same reason, I deny McNeil-PPC's motion to condition P & G's liberty to request reexamination.

This action arises from McNeil-PPC's allegations that P & G is infringing on one of McNeil-PPC's patents, specifically, Bradstreet Number 4,217,901 (Bradstreet '901). Jurisdiction arises under the Patent Laws of the United States, Title 35, United States Code, and under the Federal Declaratory Judgment Act, Title 28, United States Code. Bradstreet '901 describes a thin, crush resistant, highly absorbent sanitary napkin. The patent is described in more detail in the opinion denying McNeil-PPC's request for a preliminary injunction. *McNeil-PPC, Inc. v. Procter & Gamble Co.*, 759 F.Supp. 1505 (D.Colo.1991).

On its motion for summary judgment, P & G first contends that Bradstreet '901 is not valid because McNeil-PPC did not disclose the best mode. Second, P & G contends that its product does not infringe on Bradstreet '901 in any event.

P & G also seeks leave from this court to file a request for reexamination in the PTO of Bradstreet '901. This motion is filed in response to McNeil-PPC's request filed with the PTO for a reexamination of Bradstreet '901 in light of certain prior art McNeil-PPC did not disclose and the PTO did not cite when the PTO issued the patent. McNeil-PPC asks that I condition granting leave to P & G on P & G's acceptance of the PTO's Bradstreet '901 reexamination as binding in this action.

## I. P & G's Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment shall be

granted if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party bearing the burden of proof at trial must offer evidence and cannot rely on conclusory allegations in an affidavit. *Lujan v. National Wildlife Fed'n,* —— U.S. ——, ——, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695, 716 (1990).

### A. *Invalidity*

■ Because Bradstreet '901 is presumed to be valid, 35 U.S.C. § 282; *N.V. Akzo v. E.I. Dupont de Nemours,* 810 F.2d 1148, 1150 (Fed.Cir.1987), P & G bears the burden at trial of proving its invalidity. Furthermore, P & G must meet the same substantive evidentiary burden on its motion for summary judgment as would be required at trial. *Anderson v. Department of Health & Human Serv.,* 907 F.2d 936, 947 (10th Cir.1990); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253, 106 S.Ct. 2505, 2512–13, 91 L.Ed.2d 202 (1986). P & G must prove that Bradstreet '901 is invalid by clear and convincing evidence. *N.V. Akzo,* 810 F.2d at 1151.

■ P & G contends that Bradstreet '901 is invalid because it fails to disclose the best mode contemplated by the inventor of carrying out the patented device. *See* 35 U.S.C. § 112. The best mode at issue, P & G contends, is the technique used to form a thin, crush resistent sanitary napkin. One step in the process is drying the pad under compression. P & G contends that there is no genuine dispute that the inventors knew that to make a thin sanitary napkin with improved crush resistance, drying under compression was necessary and that the technique was not disclosed in the patent. From this, P & G argues that McNeil–PPC failed to disclose the best mode and Bradstreet '901 is invalid.

■ Section 112 of title 35 of the U.S. Code requires that "[t]he specification ... set forth the best mode contemplated by the inventor of carrying out the invention." Whether the best mode requirement has been satisfied is a question of fact. *Dana Corp. v. IPC Ltd. Partnership,* 860 F.2d 415, 418 (Fed.Cir.1988), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). "The purpose of the best mode requirement is to ensure that the public, in exchange for the rights given the inventor under the patent laws, obtains from the inventor a full disclosure of the preferred embodiment of the invention." *Dana Corp.,* 860 F.2d at 418 (citation omitted). The Federal Circuit recently summarized the two-part test for determining whether the best mode requirement has been met.

> The first is a subjective one, asking whether, at the time the inventor filed his patent application, he contemplated a best mode of practicing his invention. If he did, the second inquiry is whether his disclosure is adequate to enable one skilled in the art to practice the best mode or, in other words, whether the best mode has been concealed from the public.

*Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.,* 927 F.2d 1200, 1209 (Fed.Cir. 1991); *see Chemcast Corp. v. Arco Indus. Corp.,* 913 F.2d 923, 927 (Fed.Cir.1990).

■ McNeil–PPC responds that P & G fails to show that there is no genuine issue of material fact, under the clear and convincing standard, on either prong. P & G's position is essentially that there is no need to determine whether one skilled in the art would be able to practice the best mode based on the patent disclosure. Because, P & G argues, there is no disclosure of the drying-under-compression technique, I need not reach this second prong. Relying on language found in *Dana Corp.,* P & G contends that the sole issue is whether the best mode has been expressly disclosed in the patent. There is some broad language in *Dana Corp.* to support this. *See, e.g., Dana Corp.,* 860 F.2d at 419. The cases decided subsequent to *Dana Corp.,* however, firmly establish that the level of skill

of those practicing the relevant art is a proper consideration. *See Chemcast Corp.*, 913 F.2d at 927 (harmonizing *Dana Corp.* with the two-part test).

The Federal Circuit recently held that this two-part test "is intended to ensure that a patent applicant plays 'fair and square' with the patent system. It is a requirement that the *quid pro quo* of the patent grant be satisfied." *Amgen, Inc.*, 927 F.2d at 1209–10. If the patent is sufficiently descriptive that one skilled in the art would be able to practice the best mode, then the second prong of the test is met. It may be that the best mode is so obvious and so well understood by those skilled in the art that no disclosure is needed at all. I thus reject P & G's argument that nondisclosure alone, without reference to level of skill in the art, invalidates a patent.

P & G provides no evidence that the disclosure was inadequate for those skilled in the art to practice the best mode, much less establish that there is no dispute as to that factual issue. Although P & G attempts to impeach McNeil–PPC's evidence that Bradstreet '901 was adequate to enable those skilled in the art to practice the best mode, it was never McNeil–PPC's burden to prove that contention. On this motion, as at trial, P & G has the burden to provide clear and convincing evidence of invalidity. P & G has failed to do so. Consequently, summary judgment is not appropriate on P & G's claim that Bradstreet '901 is invalid for failing to disclose the best mode.

### B. *Infringement*

Because at trial McNeil–PPC has the burden of establishing that P & G infringed Bradstreet '901, on this motion for summary judgment, McNeil–PPC has the burden of showing the existence of a genuine issue of material fact on this issue. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by substantial equivalent. *Corning Glass Works v. Sumitomo*

*Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259, 9 U.S.P.Q.2d 1962, 1967 (Fed.Cir.1989). Determination of patent infringement is a two-step process: "the meaning of the claims must be learned from a study of all relevant patent documents; and the claims must be applied to the accused structures." *Caterpillar Tractor Co. v. Berco, S.P.A.*, 714 F.2d 1110, 1114, 219 U.S.P.Q. 185, 187 (Fed.Cir.1983). *Except where evidence pertinent to a claim's interpretation creates a factual dispute,* "claim interpretation may be resolved as an issue of law by the court on summary judgment...." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580, 12 U.S.P.Q.2d 1382, 1386 (Fed.Cir.1989).

*Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed.Cir.1990) (emphasis added).

■ P & G contends that there is no genuine issue that it did not infringe Bradstreet '901 either literally or under the doctrine of equivalents. The first step to determine infringement is to construe the patent claim. *See Moeller v. Ionetics, Inc.*, 794 F.2d 653, 656 (Fed.Cir.1986). The construction of a patent claim is a matter of law. *McGill, Inc. v. John Zinc & Co.*, 736 F.2d 666, 671 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). Nonetheless, "although claim construction is a legal question, underlying fact disputes may arise pertaining to extrinsic evidence that might preclude summary judgment treatment of claim construction." *Moeller*, 794 F.2d at 657.

P & G relies on language in Bradstreet '901, claim 1:

1. A thin catamenial absorbent product for adhesive attachment to a wearer's garment comprising:

\*     \*     \*     \*     \*     \*

means for providing said pad with planar crush resistance, said means

comprising providing on said garment-facing major surface of the pad and integral therewith, a densified, compacted, porous, absorbent, fibrous layer having a particulate hydrocolloid material distributed therein....

Bradstreet '901, col. 8, lines 15–30. Emphasizing the phrase "integral therewith, a densified, compacted, porous, absorbent, fibrous layer," P & G contends that this limitation, as interpreted by looking to the patent documents, means "a skin on a fluff pad." Under that reading, P & G argues that its product is not infringing because it is literally not a skin on a fluff pad, nor is it the substantial equivalent.

McNeil–PPC responds that there is a disputed issue of material fact regarding the meaning of the word "integral" in claim 1. McNeil–PPC argues that the densified layer may be connected to or formed as a skin on the absorbent pad. To establish this, McNeil–PPC identifies portions of Bradstreet '901 stating that the layer may be either different and independent of the pad, or part of the pad itself. *See* Bradstreet '901, col. 6, lines 33–39; col. 5, lines 12–19. The inventors also testified to this in nonconclusory fashion. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 (Fed.Cir. 1989).

P & G's claim of noninfringement rests on its interpretation of the limitation at issue. P & G does not claim that, under McNeil–PPC's interpretation of the claim, P & G's product is noninfringing. Here, there are underlying fact disputes arising from extrinsic evidence pertinent to the claim's interpretation. *See Johnston*, 885 F.2d at 1579; *Moeller*, 794 F.2d at 657. Because there are genuine issues of material fact regarding the correct interpretation of the claim, P & G is not entitled to summary judgment on its assertion that it has not literally infringed Bradstreet '901.

McNeil–PPC is also correct that there are genuine issues of material fact whether P & G's product infringes under the doctrine of substantial equivalents. This doctrine provides that an accused product is infringing if it performs substantially the same overall function in substantially the same way to yield substantially the same overall result. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.

1987). P & G's argument that the doctrine of equivalents does not apply is based on its interpretation of the claim as a "skin on a fluff pad." As I determined above, a jury question remains about the proper interpretation of the claim. Accordingly there is a jury question on the issue of substantial equivalents.

Furthermore even assuming that P & G's claim interpretation is ultimately accepted by the jury, summary judgment would not be appropriate on McNeil–PPC's claim of infringement by substantial equivalents. Although P & G disputes this by pointing to evidence presented during the preliminary injunction hearing, McNeil–PPC provides evidence to establish the existence of a genuine issue of material fact whether the accused P & G product performs substantially the same function in substantially the same way to produce substantially the same result. I conclude that P & G is not entitled to summary judgment on the claim of infringement.

## II. Reexamination

P & G asks for permission to file with the PTO a petition for reexamination of Bradstreet '901. Request for reexamination of a patent is permitted by 35 U.S.C. § 302.

Any person at any time may cite to the [PTO] in writing prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent. If the person explains in writing the pertinency and manner of applying such prior art to at least one claim of the patent, the citation of such prior art and the explanation thereof will become a part of the official file of the patent. At the written request of the person citing the prior art, his or her identity will be excluded from the patent file and kept confidential.

The rights of a third-party patent challenger in the PTO were summarized in *Syntex (U.S.A.) Inc. v. U.S. Patent & Trademark Office*, 882 F.2d 1570, 1573 (Fed.Cir.1989).

As an initial matter, the patent statute specifies that "[a]ny person" has the

right to request reexamination (section 302). The category of third-party requesters is, thus, open-ended and includes, for example, attorneys representing a principal whose identity is not disclosed to the PTO or patentee. [Citations omitted]. If a reexamination is granted, a third-party requester has the right to reply to any statement submitted by the patent owner in response to the PTO's order granting reexamination (section 304). The statute gives third-party requesters no further, specific right to participate in the reexamination proceeding. Indeed, the statute specifically prohibits further participation by third-party requesters during reexamination.

■ P & G needs no order from this court to file a request for reexamination. Although P & G's right to intervene in the reexamination proceedings is limited to some extent, *see, e.g., Syntex,* 882 F.2d at 1573; *In re Opprecht,* 868 F.2d 1264, 1265 (Fed.Cir.1989) (nonpatent holder may not intervene or file amicus curiae brief in patent holder's appeal from adverse reexamination), there does not appear to be any limit on P & G's right to request reexamination but for complying with the requirements of section 302.

Contending that without being bound by the PTO's decision, P & G will have two opportunities to invalidate Bradstreet '901, McNeil–PPC argues that leave to file for reexamination should be denied unless P & G agrees to be bound here by the result. McNeil–PPC is correct that P & G would be provided with two fronts from which to attack Bradstreet '901. First, P & G would have the PTO forum to challenge the patent in the reexamination proceedings. Second, if the PTO concludes that the patent is valid, P & G's challenge to the patent remains viable here. McNeil–PPC contends that this is unfair. After considering McNeil–PPC's arguments, I reject its motion to condition P & G's reexamination request.

First, unfair or not, McNeil–PPC points to no authority that would authorize me to prevent or limit P & G's request to the PTO for reexamination of Bradstreet '901

and its participation in that proceeding to the extent allowed by title 35. McNeil–PPC's only argument is that because P & G asked for leave to file the request, it concedes that it is required to do so. I disagree. It may be that P & G was under the erroneous assumption that I had some statutory or common law prerogative to intervene in the PTO reexamination request. McNeil–PPC does not offer, however, any rationale why any such misinterpretation bestows unto me power over the PTO where the power is otherwise absent. Furthermore, at oral argument, P & G took the position that the motion was filed as a courtesy notice and does not constitute any waiver.

■ Second, Congress authorizes challengers to take "two bites of the apple." A nonpatent holder is permitted to both challenge a patent in the PTO and in the district court. *See In re Etter,* 756 F.2d 852, 857 (Fed.Cir.), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). In *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed. Cir.1988), a nonpatent holder was sued for patent infringement. While the action progressed, the nonpatent holder requested reexamination of the subject patent in the PTO. The Federal Circuit, in concluding that the PTO was without the power to stay the reexamination pending outcome of the action and allowing the reexamination and court action to proceed simultaneously, stated:

> The awkwardness presumed to result if the PTO and court reached different conclusions is more apparent than real. The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions. Furthermore, we see nothing untoward about the PTO upholding the validity of a reexamined patent which the district court later finds invalid. This is essentially what occurs when a court finds a patent invalid after the PTO has granted it. Once again, it is important that the district court and the PTO can consider different evidence. Accordingly, different results between the two forums may

be entirely reasonable. And, if the district court determines a patent is not invalid, the PTO should continue its reexamination because, the two forums have different standards of proof for determining invalidity.

*Ethicon,* 849 F.2d at 1428–29.

This structure does not automatically lead to inefficient use of judicial resources. Rather than impede jurisdictional efficiency, this dual process has greater potential to promote efficiency, because, as stated in *In re Etter:*

> The innate function of the reexamination process is to increase the reliability of the PTO's action in issuing a patent by reexamination of the patents thought "doubtful." [Citation omitted]. When the patent is currently involved in litigation, an auxiliary function is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration.

I conclude that I have no authority to prevent P & G from seeking reexamination within the statutory limits, nor may I force P & G to forego its challenge to Bradstreet '901 here in the event that the PTO upholds the patent. Accordingly, P & G's motion for leave to file a request for reexamination of the patent in suit is moot. Likewise, McNeil–PPC's motion to condition the reexamination is improper.

Accordingly, it is ORDERED THAT

(1) Defendants' motion for summary judgment is DENIED;

(2) Defendants' motion for leave to file a request for reexamination of the patent in suit in the Patent and Trademark Office is DENIED as MOOT; and

(3) Plaintiff's motion to condition defendants' leave to request reexamination in the PTO on defendants' stipulation that the results of the reexamination would be binding on defendants' in this action is DENIED.